# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

HERB LUX, *et al.*,  )
                     )
    Plaintiffs,      )
                     )
v.                   ) Civil Action No. 3:10CV482–HEH
                     )
NANCY RODRIGUES, *et al.*, )
                     )
    Defendants.      )

## MEMORANDUM OPINION
### (Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss)

This is a constitutional challenge to that portion of Virginia Code Section 24.2 imposing a district residency requirement for persons circulating petitions for independent candidates for the United States House of Representatives. Section 24.2-506 prescribes that any candidate for public office, other than a party nominee, is required to submit a petition signed by a designated number of qualified voters to the State Board of Elections in order to qualify to have their name printed on the official ballot. At issue is the additional requirement in Section 24.2-506 that "[e]ach signature on the petition shall have been witnessed by a person who is himself a qualified voter, or qualified to register to vote, for the office for which he is circulating the petition and whose affidavit to that effect appears on each page of the petition." Va. Code Ann. § 24.2-506 (2010). The primary plaintiff in this case, Herb Lux, alleges that this provision, as applied to his candidacy for the U.S. House of Representatives, violates his First and Fourteenth

Amendment rights, as well as those rights of the other plaintiffs who served as petition circulators.[1] The Plaintiffs seek both declaratory and injunctive relief.

The matter is presently before the Court on the Plaintiffs' Motion for Preliminary Injunction and the Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Given the time constraints imposed by the filing deadline for the fall election, the parties have agreed to consolidate their motions for expedited hearing and disposition. Both parties have filed extensive memoranda supporting their respective positions. The Court heard oral argument on August 23, 2010. For the reasons stated below, the Plaintiffs' Motion for Preliminary Injunction will be denied and the Defendants' Motion to Dismiss will be granted.

Lux is a candidate for the U.S. House of Representatives in Virginia's Seventh Congressional District. Lux, however, resides in the First rather than Seventh District. In pursuing his independent candidacy, Lux filed a statement of qualification, a declaration of candidacy, and seventy-eight candidate petitions containing approximately 1,220 signatures, as required by Sections 24.2-501, 505, and 506 of the Code of Virginia, respectively. It is undisputed that these documents were timely filed with the Virginia State Board of Elections ("the Board"). Sixty-three of these candidate petitions, bearing approximately 1,063 signatures, were circulated and witnessed by Lux, who was neither a

---

[1] In the text of the opinion, Herb Lux will be referred to individually as "Lux." The other plaintiffs, Steven Cruse, Andrew Mikel, and Eugene Foret, will be referred to by last name. All plaintiffs collectively will be referred to as "Plaintiffs."

2

resident nor registered to vote in the Seventh Congressional District.[2] Fifteen additional petitions, representing approximately 157 signatures, circulated on Lux's behalf were witnessed by the other Plaintiffs in this case. Cruse, Mikel and Foret are residents of the Seventh Congressional District and appear to be fully qualified to circulate and witness the petitions.

On June 21, 2010, thirteen days after Lux filed his petition and accompanying statement and declaration, the Board notified him that all petitions bearing his name and signature as witness would be excluded from the Board's verification process. In rejecting his petition, the Board specifically cited Section 24.2-506 of the Code of Virginia and concluded that because Lux was not a resident of the Seventh Congressional District, he was not qualified by statute to witness signatures on petitions, even for his own candidacy. The Board determined, however, that the signatures on petitions circulated by Cruse, Mikel, and Foret appeared to be acceptable. The Board declined to certify the validity of the signatures on petitions circulated by Lux given his inability to satisfy the district residency requirement.

Lux contends that the district residency requirement articulated in Section 24.2-506 is violative of his speech and associational rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. In his view, the requirement that persons witnessing signatures on his petitions be qualified to vote in that

---

[2] Lux's statutory qualifications to run for the Seventh Congressional District seat are not otherwise in question. *See* U.S. Const. art. I, § 2, cl. 2.

3

congressional district constrains "his ability to disseminate his political views by restricting the number of message carriers who can gather signatures on his behalf, and in turn, the size of the audience that can be reached." (Pls.' Br. Supp. Mot. Prelim. Inj. 6). In support of this contention, Lux relies on *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 194–95, 119 S. Ct. 636, 643–44 (1999).

Lux also perceives the district residency requirement as restricting his right of issue advocacy. "[I]t prevents Mr. Lux from choosing what he believes to be the most effective means of conveying his message." (Pls.' Br. Supp. Mot. Prelim. Inj. 6–7). This argument is drawn from the teachings of *Meyer v. Grant*, 486 U.S. 414, 424, 108 S. Ct. 1886, 1893 (1988).

Third, Lux argues that the district residency requirement obstructs his right to advocate for political change and to associate with other potentially like-minded voters. "[I]t restricts Mr. Lux's ability to associate in a meaningful way with individuals that sign his petition for the purpose of eliciting political change." (Pls.' Br. Supp. Mot. Prelim. Inj. 7). Again, Lux relies upon *Meyer*, 486 U.S. at 421–22, 108 S. Ct. at 1891–92.

Lastly, Lux argues that the statutory provision at issue obstructs "his ability to gain access to the ballot, and therefore, his ability to make his candidacy the subject of district-, state-, and nation-wide discussion." (Pls.' Br. Supp. Mot. Prelim. Inj. 7).[3]

---

[3]Throughout their responsive memoranda, the Defendants emphasize that Virginia has among the least restrictive ballot access requirements in the nation. The United States Court of Appeals for the Fourth Circuit shares this impression. *Libertarian Party of Va. v. Davis*, 766 F.2d 865, 868 (4th Cir. 1985).

4

The Defendants, all members of the State Board of Elections, urge the Court to deny Plaintiffs' request for a preliminary injunction and to dismiss the underlying Complaint. The Defendants contend that the operative issue, the district residency requirement specified in Section 24.2-506, has been upheld by the U.S. Court of Appeals for the Fourth Circuit in *Libertarian Party of Va. v. Davis*, 591 F. Supp. 1561 (E.D. Va. 1984), *aff'd* 766 F.2d 865 (4th Cir. 1985). Therefore, the Defendants argue that the Plaintiffs are not likely to succeed on the merits, a prerequisite to preliminary injunctive relief. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Pointing to specific findings in *Davis*, upholding the constitutional soundness of the district residency requirement, albeit in a difference context, the Defendants maintain that the requirement is rationally based as applied in this case. Therefore, the Defendants argue that Plaintiffs' Complaint cannot survive Rule 12(b)(6) scrutiny and should be dismissed.

The requirements for preliminary injunctive relief are well established in the Fourth Circuit. Such relief is appropriate where the petitioner establishes that he or she is 1) likely to succeed on the merits; 2) likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tip in his or her favor; and 4) that an injunction is in the public interest. *Id.*; *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (2009). As the Fourth Circuit pointed out in *Real Truth About Obama*, *Winter* requires that a plaintiff make a clear showing that it will likely succeed on the merits at trial. *Real Truth About Obama, Inc*, 575 F.3d at 346. This

standard is far stricter than the requirements for preliminary injunctive relief in the Fourth Circuit prior to *Winter*. *Id.* at 347. The debate in this case appears to focus almost exclusively on the likelihood of Plaintiffs succeeding on the merits.

Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; . . . it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), amplified that standard, noting that, to survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. While it does not require "detailed factual allegations," *Twombly* held that Fed. R. Civ. P. 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* at 555, 127 S. Ct. at 1964–65. Thus, a complaint containing facts that are merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief. *Id.* at 557, 127 S. Ct. at 1966. Rather, a complaint achieves facial plausibility when it contains sufficient allegations supporting the reasonable inference that the facts alleged support an actionable claim. *Id.* at 556, 127 S. Ct. at 1965; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

As Judge Niemeyer noted in *Francis v. Giacomelli*, this analysis is context specific and requires the "reviewing court to draw on its judicial experience and common sense."

*Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The Court also stressed in *Giacomelli* that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1955).

Both the Plaintiffs and the Defendants agree that in cases involving constitutional challenges to voting regulations, particularly those implicating the First Amendment, courts traditionally apply the balancing test announced by the United States Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S. Ct. 1564 (1983), and *Doe v. Reed*, 130 S. Ct. 2811 (2010). Assuming that petition signing is expressive conduct, to withstand judicial scrutiny, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Reed*, 130 S. Ct. at 2818 (citing *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2774 (2008)).

In *Anderson*, the U.S. Supreme Court observed that

> [c]onstitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions. Instead, a court must resolve a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments [at issue]. . . . It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789; 103 S. Ct. at 1570 (internal citations omitted).

The Court's initial task is to apply the balancing test prescribed by *Anderson*, then determine what level of scrutiny should govern its review of Plaintiffs' claims. Lux contends that the district residency requirement suppresses his freedom of political expression and inhibits his right of association. The Defendants maintain that the statutory requirement that a person qualified to vote in that congressional district witness the signatures on Lux's petition does neither. The Board counters that Lux is free to communicate his thoughts and ideas to voters, as long as a person qualified to vote in that district is present when the petitions are signed. In their opinion, the witness requirement in no way affects the content or manner of Lux's expression of political ideas.

Lux's constitutional challenge is informed in large measure by the U.S. Supreme Court's reasoning in *Buckley* and *Meyer*, *supra*. Both cases involved the constitutionality of statutory constraints on ballot-initiative petition circulators. In each case, the Court concluded that the restrictions at issue impose severe burdens on political speech and were not narrowly tailored to serve a compelling state interest. The task at hand in the immediate case—as in *Buckley* and *Meyer*—is to determine whether the district residency requirement here in controversy is a valid ballot access provision or an invalid interactive speech restriction. As Justice Ginsberg noted in *Buckley*, the Court's First Amendment analysis should be focused on "undue hindrances to political conversations and the exchange of ideas." *Buckley*, 525 U.S. at 192, 119 S. Ct. at 642.

In *Meyer*, the U.S. Supreme Court held that the circulation of a petition in support of a ballot initiative to amend the Colorado Constitution involved protected political speech. Following that line of reasoning, the Court struck down a Colorado statutory prohibition against paying petition circulators as violative of the First Amendment. Central to this conclusion was the Court's finding that "circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 486 U.S. at 421–22, 108 S. Ct. at 1892. Troubling to the Court in *Meyer* was the prescribed sanction for paying petition circulators—punishment as a felony. Given the statute's limitation on political expression, the Court adopted an "exacting scrutiny" standard of review. *Id.* at 420, 108 S. Ct. at 1891.

Similarly, *Buckley* involved a constitutional challenge to a Colorado statute restricting petition circulators. The limitation under judicial review required petition circulators to be registered voters and wear identification badges bearing the circulator's name. In addition, the statute required that the name and address of all paid circulators, along with the amount paid to each, be publicly reported. The Court concluded that such restrictions inhibited participation in the petition circulation process, limited the number of people available to circulate and sign petitions, and consequently, restricted core political speech. *Buckley*, 525 U.S. at 194, 197–98, 119 S. Ct. at 643–45.

Plaintiffs also rely on *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000), in which a

9

statute requiring petition circulators for candidates for the U.S. House of Representatives and U.S. Senate be registered to vote in the same district or political subdivision for which the candidate is seeking office. The Court in *Krislov* noted in its analysis that "[w]hat is particularly important in this case . . . is the number of people the registration and residency requirements exclude from gathering signatures and thus disseminating the candidates' political message." *Id.* at 860. Because the circulation of nominating petitions necessarily entails political speech with First and Fourteenth Amendment implications, the Seventh Circuit employed an exacting scrutiny standard. The Court ultimately concluded that Illinois failed to demonstrate either a compelling interest or that the statute was narrowly tailored. *Id.* at 866.

In their Memorandum in Opposition, Defendants hastily point out that the U.S. Court of Appeals for the Eighth Circuit in *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614 (8th Cir. 2001), rejected the Seventh Circuit's reasoning in *Krislov* and held that residency requirements for circulation of petitions do not violate the First Amendment. The Court in *Initiative & Referendum Inst.* began its analysis by observing that "[s]evere burdens on speech trigger an exacting standard in which regulations must be narrowly tailored to serve a compelling state interest, whereas lesser burdens receive a lower level of review." *Id.* at 616. The Court's ultimate holding focused on whether the state had a compelling interest in protecting the petition process from fraud and abuse by insuring that circulators are state residents subject to the Secretary of State's subpoena power. *Id.*

However, en route to its decision, the Court observed that the regulation imposing residency requirements for circulators of petitions "does not unduly restrict speech." *Id.* Furthermore, the Court also emphasized that

> many alternative means remain to non-residents who wish to communicate their views on initiative measures. Non-residents are still free to speak to voters regarding particular measures; they certainly may train residents on the issues involved and may instruct them on the best way to collect signatures; and they may even accompany circulators.

*Id.* at 617.

Defendants argue that the district residency requirement in Section 24.2-506 of the Code of Virginia has minimal First and Fourteenth Amendment implications as applied in this case. They contend that the provision is more akin to a ballot access requirement than a significant burden on speech or association, and consequently, does not warrant strict scrutiny analysis. The Defendants emphasize that "the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Clements v. Fashing*, 457 U.S. 957, 963, 102 S. Ct. 2836, 2843 (1982) (citing *Bullock v. Carter*, 405 U.S. 134, 143, 92 S. Ct. 849, 855 (1972)). The district residency requirement at issue imposes no restrictions on Lux as a candidate or advocate, but only as a signature attester. The only limitation imposed by Section 24.2-506 is that the person witnessing the signatures be a resident of the congressional district in which the candidate is seeking office. The witness need not even be a registered voter in that district, as long as they reside there. Moreover, there is no requirement that petition circulators wear

identification badges or register in any fashion. Nonresident independent candidates, such as Lux, may use as many qualified surrogates as they wish to collect signatures and promote their candidacy.

Although the U.S. Supreme Court has never squarely confronted the issue of the constitutionality of residency requirements for circulators of candidates' petitions, the U.S. Court of Appeals for the Fourth Circuit appears to have spoken clearly. In *Libertarian Party of Va. v. Davis*, 766 F.2d 865 (4th Cir. 1985), the Court had occasion to examine a statutory provision similar to Section 24.2-506. While the context of the challenge in *Libertarian Party of Va.* may have been different from the immediate case, the associated burden on First and Fourteenth Amendment rights was identical. At issue was former Section 24.1-159 of the Code of Virginia. "This provision dictates that each signature on the petition be witnessed and attested by a qualified voter from the same congressional district as the petition signer." *Id.* at 869.

The Fourth Circuit concluded in *Libertarian Party of Va.* that

> the requirement that the witness be from the same congressional district as the petition signer serves the important purpose of assuring "some indication of geographic as well as numerical support" by demonstrating "that within each congressional district there is at least one 'activist' sufficiently motivated to shoulder the burden of witnessing signatures." It is difficult to imagine how the state could accomplish these objectives by less restrictive means.

*Id.* at 869–70 (internal citations omitted).

The U.S. Supreme Court has long recognized that reasonable nondiscriminatory

ballot access restrictions that serve important regulatory interests should generally be upheld. *See, e.g., Burdick v. Takushi*, 504 U.S. 428, 434, 112 S. Ct. 2059, 2063 (1992). The right of a candidate to appear on a ballot is not fundamental and thus does not compel strict scrutiny by itself. *Clements*, 457 U.S. at 963, 102 S. Ct. at 2843. Moreover, while restrictions on ballot access necessarily implicate the freedom to associate for political purposes to some degree, this freedom is not absolute and is "necessarily subject to qualification if elections are to be run fairly and effectively." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 107 S. Ct. 533, 536 (1986); *see also Wood v. Quinn*, 104 F. Supp. 2d 611, 614 (E.D. Va. 2000).

While every statutory constraint on the circulation of a candidate's petitions implicates the First and Fourteenth Amendments to some degree, the restrictions imposed by Section 24.2-506 requiring that persons witnessing signatures on petitions live in the same district as the voter appear to serve a reasonable regulatory interest.

A ballot excess provision, however, may be sustainable as a practical matter, yet be unconstitutional as applied. "Under traditional equal protection principles, legislatures are presumed to have acted constitutionally, and this presumption is overcome 'only when the challenged statute places burdens upon suspect classes of persons or on a constitutional right that is deemed to be fundamental.'" *Amarasinghe v. Quinn*, 148 F. Supp. 2d 630, 635 (E.D. Va. 2001). There is no evidence in this case that Section 24.2-506 places an undue burden upon suspect classes of persons. The fact that Lux has

chosen to run for political office independent of a party affiliation does not place him in a suspect class triggering strict scrutiny. Therefore, since the right to appear on a ballot is not a fundamental right, rational basis scrutiny appears appropriate in this case. In employing a rational basis standard of review, courts will not overturn state actions "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84, 120 S. Ct. 631, 646 (2000) (citing *Vance v. Bradley*, 440 U.S. 93, 97, 99 S. Ct. 939, 943 (1979)).

States have a well-settled interest in protecting the political process and toward that end may enact regulations to safeguard against frivolous candidacies. To ensure an efficient election process, states may adopt measures to "avoid[] voter confusion caused by an overcrowded ballot." *Wood*, 104 F. Supp. 2d at 614–15 (citing *Clements*, 457 U.S. at 965, 102 S. Ct. at 2844.) Courts have historically recognized that states have a legitimate interest of the highest order "in keeping its ballots within manageable, understandable limits." *Lubin v. Panish*, 415 U.S. 709, 715, 94 S. Ct. 1315, 1319 (1974). The U.S. Supreme Court has also uniformly upheld ballot access provisions, such as the one presently before the Court, that may "condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." *Munro*, 479 U.S. at 193, 107 S. Ct. at 536.

Relying on comments by the Court in *Munro*, Plaintiffs contend that the signature requirement mandated by Section 24.2-506 is sufficient to evidence such a "modicum of support."[4] *Id.* In theory, Plaintiffs may well be correct. The Commonwealth of Virginia, however, in its discretion, has determined that the willingness of resident political activists to witness petition signatures is a better indicia of the depth of a candidate's base support. Courts have not been "inclined to second guess the impartial judgments of lawmakers concerning the utility of legislation." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92, 107 S. Ct. 1637, 1651 (1987) (internal citations omitted). At bottom, this Court must limit its consideration of "whether the legislature had a rational basis for believing there was a legitimate purpose that would be advanced by the statute . . . [and] likewise apply a deferential standard in identifying a statute's putative benefits." *Yamaha Motor Corp.*, 401 F.3d at 569 (citing *CTS Corp.*, 481 U.S. at 92–93, 107 S. Ct. at 1651). The U.S. Court of Appeals for the Fourth Circuit appears to concur with the Virginia General Assembly. *See Libertarian Party of Va.*, 766 F.2d at 869–70. The same logic governs the immediate case.

Accordingly, the Court finds that Plaintiffs have failed to demonstrate that they are likely to succeed on the merits, particularly given the weight of contrary jurisprudence in the Fourth Circuit. In their arguments, both sides have stressed this element of proof as pivotal to the near exclusion of all other requirements for preliminary injunctive relief

---

[4]Section 24.2-506 requires an independent candidate for Congress to garner 1,000 signatures to qualify for ballot eligibility.

articulated in *Winter*, 129 S. Ct. at 374.

Both parties also acknowledged during oral argument that the Court's ruling on the core issue governing Plaintiffs' Motion for Preliminary Injunction would also be dispositive of the Defendants' Motion to Dismiss. Consequently, based on the foregoing analysis, this Court finds that the Complaint fails to state a claim for relief that is plausible on it face. *See Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

The Court will therefore deny Plaintiffs' Motion for Preliminary Injunction and grant Defendants' Motion to Dismiss. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Aug 26, 2010
Richmond, VA