IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| HERB LUX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10CV482–HEH |
| | ) | |
| CHARLES E. JUDD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
### (Cross-Motions for Summary Judgment and Defendants' Motion to Dismiss for Lack of Article III Jurisdiction)

This case is before the Court on remand from the United States Court of Appeals for the Fourth Circuit, *Lux v. Judd*, 651 F.3d 396 (4th Cir. 2011). In reversing this Court's dismissal of Plaintiff Herb Lux's claims, the Fourth Circuit instructed this Court to "conduct an independent analysis of the state interest served by the district residency requirement and, after determining the appropriate standard of review, conclude whether that portion of section 24.2-506 unduly restricts Lux's constitutional rights." *Id.* at 404. The case is presently before the Court on Motions for Summary Judgment filed by each party.

Prior to addressing the substantive constitutional issues, the defendant members[1] of the Virginia State Board of Elections ("the Board" or, including its named members,

---

[1] The original lawsuit filed in this Court was styled *Herb Lux, et al. v. Nancy Rodrigues, et al.* On January 28, 2011, Charles Judd, Kimberly Bowers, and Donald Palmer became members of the Virginia State Board of Elections and were substituted as named Defendants by operation of law under Federal Rule of Civil Procedure 25(d). The Fourth Circuit affirmed this Court's dismissal of Herb Lux's original co-plaintiffs.

"Defendants") moved for dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that this Court lacks subject matter jurisdiction. Both parties have filed memoranda of law supporting their respective positions on the jurisdictional issue. This Court heard oral argument on January 25, 2012. The parties were afforded a post-argument opportunity to file supplemental memoranda addressing whether the district residency requirement is narrowly tailored to serve a compelling governmental interest. Based on the analysis which follows, Defendants' motion to dismiss for want of Article III jurisdiction will be denied and Plaintiff's motion for summary judgment will be granted.

The constitutional challenge at hand focuses on that portion of Virginia Code Section 24.2-506 which imposes a district residency requirement for persons circulating petitions for independent candidates for the United States House of Representatives. Section 24.2-506 provides that any candidate for public office, other than a party nominee, must submit to the Board a petition signed by a designated number of qualified voters in order to have their name printed on the official ballot. The element of that statute in controversy is the additional requirement that "[e]ach signature on the petition shall have been witnessed by a person who is himself a qualified voter, or qualified to register to vote, for the office for which he is circulating the petition and whose affidavit to that effect appears on each page of the petition." Va. Code Ann. § 24.2-506 (2010). Plaintiff alleges in his Complaint that this provision, both facially and as applied to his candidacy for the U.S. House of Representatives, violates his freedom of speech and association under the First and Fourteenth Amendments to the United States Constitution.

2

Plaintiff seeks both declaratory and injunctive relief.[2]

The facts originally relied upon by this Court are not in dispute.  Plaintiff Herb Lux ("Lux" or "Plaintiff") was an announced candidate for the U.S. House of Representatives in Virginia's Seventh Congressional District in 2010.  Lux, however, resides in the First, rather than Seventh, District.  In pursuing his independent candidacy, Lux, as required by Virginia law, filed a statement of qualification, a declaration of candidacy, and seventy-eight candidate petitions purportedly containing approximately 1220 signatures, as required by Sections 24.2-501, 505, and 506 of the Code of Virginia, respectively.  It is undisputed that these documents were timely filed with the Board.  Sixty-three of these candidate petitions, bearing approximately 1063 signatures, were circulated and witnessed personally by Lux, who was neither a resident nor registered to vote in the Seventh Congressional District.  Lux otherwise met all of the statutory and constitutional qualifications to run for the U.S. House of Representatives in the Seventh District.

Lux was subsequently advised by the Board that all petitions bearing his name and signature as witness would be excluded from the Board's verification process.  In rejecting his petitions, the Board specifically cited Section 24.2-506 and concluded that because Lux was not a resident of the Seventh Congressional District, he was not eligible

---

[2] In initially denying Plaintiff's Motion for Preliminary Injunction, this Court relied in significant part on *Libertarian Party of Va. v. Davis*, 766 F.2d 865 (4th Cir. 1985).  In *Davis*, the Fourth Circuit specifically rejected a similar challenge to the district residency requirement here at issue.  In reversing and remanding this case, however, the Fourth Circuit counseled this Court that the teachings of *Davis* may have been undermined by subsequent Supreme Court decisions.  *Lux*, 651 F.3d at 404.

3

by statute to witness signatures on petitions, even for his own candidacy. The Board did, however, accept the signatures on petitions circulated by other residents. But after excluding the more than 1063 signatures collected by Lux, the Board determined that he had failed to collect the requisite 1000 signatures, and consequently, did not qualify to have his name included on the November 2, 2010 ballot. Lux contends that the statutory requirement that petition circulators be district residents inhibits his speech and associational rights.

In the wake of the Fourth Circuit's remand back to the trial court, the Board represents that it has now officially reviewed *all* of the signatures on Plaintiff's Petition of Qualified Voters, including the signatures that Lux personally collected and witnessed. The Board contends that their count revealed a total of 943 signatures from qualified voters, well under the 1000-signature threshold required by Section 24.2-506 to qualify as an independent candidate. Lux disputed the accuracy of this count and was afforded an opportunity to conduct discovery.

Predicated on its recent recount of petition signatures, the Board contends that Lux would not have met the statutory qualifications for candidacy *even if* all signatures on petitions circulated by him were validated and includable. Consequently, the Board maintains that Lux has not alleged a cognizable injury in fact sufficient to confer standing to challenge the witnessing requirements of Section 24.2-506.[3] At best, the Board

---

[3] The Board bolsters its argument by claiming that Lux was unaware of the residency requirement at the time the petitions were circulated, such that he could not have been burdened by its restrictions. The record does not appear to support this contention. In fact, the petition form issued by the Board and employed by Lux requires the circulator to attest under oath that he

suggests that the interest at stake is general and lacks the degree of particularity necessary to support Article III standing.

"The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government," and standing to sue "is perhaps the most important of these doctrines." *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324 (1984). In *Lujan v. Defenders of Wildlife*, the Supreme Court restated the time-honored three elements which constitute the irreducible constitutional minimum requirements of standing. 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). To satisfy these Article III jurisdictional requirements, "[a] claimant must demonstrate (1) an 'injury in fact'; (2) a 'causal connection between the injury and the conduct complained of,' such that the injury is 'fairly traceable' to the defendant's actions; and (3) a likelihood that the injury 'will be redressed by a favorable decision.'" *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011) (quoting *Lujan*, 504 U.S. at 560–61, 112 S. Ct. at 2136). The first element, injury in fact, is central to the standing issue currently before the Court. As the Fourth Circuit pointed out in *Benham*, this element requires a determination of whether the plaintiff has "adduced facts demonstrating that [he has] suffered an invasion of a legally protected interest." *Id.* at 135 (quoting *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005)). To satisfy the injury-in-fact requirement grounded in Article III, a claimant "must demonstrate an injury that is 'concrete and particularized' and 'actual or imminent,' rather than 'conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504

---

is registered, or eligible to register, in the district in which the candidate seeks office. (Pl.'s Compl., Ex. D at 2, ECF No. 1.)

U.S. at 560, 112 S. Ct. at 2136).

Initially, the Court must identify the specific element of the First Amendment at issue. While both parties recognize that Lux seeks relief for alleged violations of his First Amendment rights to political speech and association, each focuses on a different theory of injury. The Board's standing challenge is cast in terms of denial of ballot access, while Lux's Complaint speaks of speech diminution and impairment of his right to circulate his petition personally and to use non-resident supporters to gather signatures. Consequently, Lux contends that the Board misconstrues the nature of the constitutional injury underlying his claim. Even assuming that the Board is correct that Lux failed to garner the requisite number of signatures to qualify for ballot placement in 2010, he points out that the resulting injury is distinct and separate from the abridgement of his right to interact with citizens through the circulation of petitions. Lux maintains that the district residency restriction in Section 24.2-506 not only impeded his ability to collect the 1000 signatures necessary to qualify as an independent candidate for Congress, but also to convey his message to the voters.[4] This Court agrees.

Lux's entitlement to relief turns not on his First Amendment right to have his name printed on the 2010 ballot, but on the severity of the statutory burden placed on his

---

[4] As Lux puts it,

> [He] is not alleging a right to be on the ballot. He is claiming a violation of his First Amendment right to speak and associate with qualified voters because he has been and expects to continue to be unjustifiably precluded from having his petition signatures he and any nonresident signature gatherers solicited for his candidacy counted under Va. Code Ann. § 24.2-506.

(Pl.'s Reply Br. Mot. Summ. J. 3.)

6

attempt to gain such access. The distinction is subtle but significant. Even if the Board

had determined that Lux qualified as an independent candidate, it would have no legal

bearing on the alleged undue burden imposed by having been deprived of the opportunity

to gather signatures on behalf of his candidacy. *See Lerman v. Bd. of Elections*, 232 F.3d

135, 142, 143 (2d Cir. 2000) ("The injury-in-fact . . . allege[d] concerns the very process

of engaging in political activity in support of [a particular] candidacy, and that injury is

sufficient to confer standing under Article III.").

In rejecting a similar standing challenge, the Court of Appeals for the Seventh

Circuit in *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) explained:

> Here, while the candidates were able to obtain enough signatures to appear
> on the ballot, they were injured in several different ways. By being denied
> use of non-registered, non-resident solicitors, they were required to allocate
> additional campaign resources to gather signatures and were deprived of the
> solicitors (political advocates) of their choice. This in itself can be an
> injury to First Amendment rights. . . . Second, because they were prohibited
> from using non-registered and non-resident circulators, they were limited in
> the choice and number of people to carry their message to the public . . .
> limiting the size of the audience the candidates could reach and reducing
> the quantum of speech about the candidates' political views that otherwise
> could be generated.

*Id.* at 860–61 (citing *Meyer*, 486 U.S. at 421–22, 108 S. Ct. at 1893–94.

The same reasoning applies here. Lux's Complaint states a concrete and

particularized injury directly caused by the Board's enforcement of Section 24.2-506. He

therefore has demonstrated standing to prosecute his claims.

Although not specifically addressed, the Board implies that Lux's claims are moot

as well. As the Fourth Circuit noted in *Lux v. Judd*, however, Lux's Complaint

specifically states that he is considering a future run for the U.S. House of

Representatives in Virginia's Seventh Congressional District. The Fourth Circuit concluded that this statement, coupled with his expectation that Section 24.2-506 would interfere with his circulation of petitions on his own behalf was sufficient to "support a reasonable expectation that Lux will be adversely affected by the residency requirement in future elections whether or not he lives in the Seventh District. . . . As a result, Lux's challenge fits comfortably into the mootness exception for conduct capable of repetition yet evading review." *Lux*, 651 F.3d at 401.[5] Accordingly, the Board's motion to dismiss for lack of Article III jurisdiction is denied.[6] The Court will now progress to the merits of the motions for summary judgment.

Carefully following the course charted by the Fourth Circuit, this Court must first determine the appropriate standard of review of Lux's constitutional claims. Lux contends that the district residency requirement prescribed in Section 24.2-506 severely burdens his right to circulate petitions supporting his candidacy and inhibits his associated rights to communicate his political message to prospective voters. In *Buckley v. Am. Constitutional Law Found., Inc.*, the Supreme Court described petition circulation and its attendant robust political discussion as "core political speech" for which First Amendment protection is "at its zenith." 525 U.S. 182, 186–87, 119 S. Ct. 636, 639–40

---

[5] The Board's reliance on the recent decision in *Perry v. Judd*, 2012 U.S. App. LEXIS 980 (4th Cir. 2012), is misplaced. The Court in *Perry* did "not address in any fashion the merits of [Governor Perry's] constitutional challenge to Virginia's circulator residency requirement because as the district court noted, 'a decision on laches resolves the motion [for preliminary injunction]' due to the fact that it operates as an affirmative defense." *Id.* at *25–26. Moreover, Perry and Lux have sought different forms of relief: Perry—inclusion of his name on the primary ballot this year; Lux—the right to circulate his petition in future elections as well.

[6] Under the time-honored standard to prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

8

(1999) (quoting *Meyer*, 486 U.S. at 422, 425, 108 S. Ct. at 1892, 1894). In finding this type of interactive communication concerning political change to be core political speech, the Court noted that any limitation on such expression is subject to exacting scrutiny. *Meyer*, 486 U.S. at 420, 108 S. Ct. at 1891.

Not every voting, ballot, or campaign regulation, however, is subject to strict scrutiny—only those that directly restrict or otherwise burden core political speech and associational rights. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S. Ct. 1364, 1369 (1997); *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S. Ct. 2059, 2063 (1992). The Court in *Timmons* went further and articulated the appropriate analytical framework for assessing the constitutionality under the First and Fourteenth Amendments of state election laws.

> When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the "character and magnitude" of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. (Internal quotations and citations omitted.) Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.

520 U.S. at 359, 117 S. Ct. at 1370.

When a state's election law directly implicates core political speech, such as petition circulation, the Supreme Court has uniformly subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest. *See Burson v. Freeman*, 504 U.S. 191, 197–98, 112 S. Ct. 1846, 1850–51 (1992). In applying strict scrutiny, courts have staked wide boundaries with respect to petition circulation. In *Meyer*, which involved a First

Amendment challenge to Colorado's law making it a felony to pay initiative petition circulators, the Court concluded that the restriction was sufficiently allied to core political speech to warrant strict scrutiny. The Court observed that initiative petition circulation necessarily involved "both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421, 108 S. Ct. at 1891. This Court is therefore of the opinion that the district residency requirement espoused in Section 24.2-506 affects core political speech and must be subject to strict or exacting scrutiny.

Having determined the appropriate standard of review, this Court will now shift its attention to "an independent analysis of the state interest served by the district residency requirement and . . . [determine] whether that portion of Section 24.2-506 unduly restricts Lux's constitutional rights." *Lux*, 651 F.3d at 404. The Court begins this facet of its analysis by acknowledging that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S. Ct. 1274, 1279 (1974). "The Constitution grants States broad power to prescribe the 'Time, Places and Manner of holding Elections for Senators and Representatives,' Art. I § 4, cl. 1." *Timmons*, 520 U.S. at 358, 117 S. Ct. at 1369–70 (internal citations omitted).

Having determined from well settled First Amendment jurisprudence that the district residency requirement imposes a significant burden on Lux's rights, the task at hand for the Court is to assess whether Section 24.2-506 is narrowly tailored and

10

advances a compelling state interest.  While the governing standard has been clearly

articulated, its application is far more murky.  As the Supreme Court cautioned in *Storer*,

"no litmus-paper test . . . separat[es] those restrictions that are valid from those that are

invidious . . . . The rule is not self-executing and is no substitute for the hard judgments

that must be made."  415 U.S. at 730, 94 S. Ct. at 1279.  No bright line separates

permissible election-related regulation from unconstitutional infringements on First

Amendment freedoms.  *See id.*

In addressing the governmental interest served by Section 24.2-506 at oral

argument and in supplemental briefing, the Solicitor General of Virginia, on behalf of the

Board, focused his argument solely on the prevention of election fraud and preserving the

integrity of the electoral process.  The Board contends that the residency requirement

furthers the police powers of the state in enforcing its election laws.  They argue that

absent such geographic restriction, a circulator who is the subject of a regulatory inquiry

may be beyond the state's subpoena power.

The Solicitor General, however, candidly conceded that the lesser burden of a

statutory requirement of Virginia *state* residency, as opposed to specific congressional

*district* residency, may be adequate to serve this regulatory purpose.  Presumably, a

petition circulator residing in the Commonwealth of Virginia would be subject to the

state's subpoena power.[7]  The Board also stressed that, in its view, Section 24.2-506

---

[7] Rule 3A:12(c) provides that a subpoena may be executed anywhere in the state by an officer
authorized by law to execute the subpoena in the place where it is executed.  Sup. Ct. Va. R.
3A:12.

presently contains a state residency requirement for petition circulators.[8]

As the Court of Appeals for the Second Circuit noted in *Lerman*, "ensuring integrity and preventing fraud in the electoral process is -- unquestionably compelling. . . . However, the fact that the defendants' asserted interests are 'important in the abstract' does not necessarily mean that its chosen means of regulation 'will in fact advance those interests.'" 232 F.3d at 149 (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664, 114 S. Ct. 2445, 2470 (1994)).  While the court in *Lerman* rejected the argument that a district residency requirement was necessary to protect the integrity of the signature collection process, it implied that a state residency requirement was more than adequate to ensure that a petition witness be answerable to a subpoena.  232 F.3d at 152.  The Eighth Circuit reached a similar conclusion in *Initiative & Referendum Inst. v. Jaeger*, 241 F.3d 614, 616 (8th Cir. 2001).  *But see Nader v. Blackwell*, 545 F.3d 459, 475 (6th Cir. 2008); *Nader v. Brewer*, 531 F.3d 1028, 1036 (9th Cir. 2008).

A careful review of the legal landscape reveals no case in which the Supreme Court or a Court of Appeals has found a state residency requirement for circulators of petitions for the U.S. House of Representatives or Senate to be unconstitutionally burdensome.  Indeed, the Supreme Court in *Buckley*, without deciding the constitutionality of a state residency requirement for circulators of petitions for presidential candidates, found that a residency requirement would serve the state's goals less restrictively than other measures because it would allow the state to locate and

---

[8] Lux's constitutional challenge does not extend to the state residency requirement, only to the inter-district restriction.  This Court therefore offers no opinion as to the constitutionally of a state residency requirement should Section 24.2-506 be construed to contain one.

12

subpoena circulators. 525 U.S. at 196, 119 S. Ct. at 636.

In addition to requiring that a petition circulator be a resident of the congressional

district in which they are circulating the petition, the Board stresses that Section 24.2-506

also requires that they be a "qualified voter." The term "qualified voter," as defined in

Section 24.2-101, requires, *inter alia*, that such person be a resident of the

Commonwealth of Virginia. The Board maintains that, in effect, the current law in

Virginia requires that persons circulating a candidate's petition first be a resident of the

Commonwealth of Virginia, and second, be qualified to vote in the congressional district

in which they are circulating the petition. Assuming this plausible construction is correct,

it appears adequate to serve the Commonwealth's important interests.

An additional statutory safeguard available to police petition circulators is Virginia

Code Section 24.2-1016. This statute provides that

> Any willfully false material statement or entry made by any person in any
> statement, form, or report required by [the election laws of Virginia] shall
> constitute the crime of election fraud and be punishable as a Class 5 felony.
> Any preprinted statement, form, or report shall include a statement of such
> unlawful conduct and the penalty provided in this Section.

The petitions circulated by candidates for Congress conspicuously contain this

admonition. The Supreme Court in *Meyer* found a similar clearly-published statute to be

adequate to minimize the risk of false or misleading statements relating to petitions. 486

U.S. at 426–27, 108 S. Ct. at 1894–95.

Given the availability of other equally effective and decidedly less burdensome

statutory tools to safeguard the Commonwealth's interest in protecting the integrity of the

electoral process, this Court concludes that the district residency requirement poses an

undue restriction on Lux's First Amendment rights. The additional overlay of a congressional district residency requirement is too widely tailored to pass constitutional scrutiny. Lux's Motion for Summary Judgment is therefore granted with respect to his request for declaratory relief both facially[9] and as applied.

Having found the statutory district residency requirement for petition circulation for independent candidates for the U.S. House of Representatives to violate the First and Fourteenth Amendments, the Court will next consider Lux's request for permanent injunctive relief.

In Lux's Verified Complaint for Declaratory and Injunctive Relief, he urges this Court to award him permanent injunctive relief "enjoining [the Board] . . . from enforcing the district-residency requirement . . . [and] compelling [the Board] to verify and count all signatures contained on Herb Lux's candidate petitions regardless of whether the petition circulator satisfies the district-residency requirement." (Pl.'s Compl. 10.) As the Supreme Court restated in *Monsanto Co. v. Geerston Seed Farms*,

> A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

___ U.S. ___, 130 S. Ct. 2743, 2756 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*,

---

[9] "Outside of the First Amendment context, a facial challenger can only succeed by establish[ing] that no set of circumstances exists under which the [a]ct would be valid." *Preston v. Leake*, 660 F.3d 726, 738 (4th Cir. 2011). Courts, however, have adopted a less exacting standard in the First Amendment context. *Id.* at 738–79.

547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006)); *see also Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011).

It is well established that the loss of First Amendment rights unquestionably constitutes an irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2689 (1976). It is also universally recognized that monetary damages are inadequate to compensate for the loss of First Amendment protected rights. *See Legend Night Club*, 637 F.3d at 302. It is difficult to equate in monetary terms the damage Lux potentially suffers from a statute that inhibits his right to promote his candidacy and convey his political message by personally circulating his petitions—a right guaranteed by the First Amendment. More importantly, Lux's goal is a seat in Congress, not a monetary award.

The Court must next balance the relative hardships between Lux and the Commonwealth of Virginia if the relief he seeks is granted. Viewed inversely, the Commonwealth would suffer minimal harm since the apparent existing state residency requirement in Section 24.2-506, coupled with the penalties provided by Section 24.2-1016 for false statements, would seem to provide adequate protection against illegal campaign practices. Furthermore, the issuance of an injunction would simply prevent the Commonwealth from enforcing unconstitutional restrictions on First Amendment rights. As the Court of Appeals for the Seventh Circuit reasoned in *Joelner v. Vill. of Wash. Park, Ill.*, "there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because 'it is always in the public interest' to protect First Amendment liberties." 378 F.3d 613, 620 (7th Cir. 2004) (citing *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).

15

Lastly, as the Fourth Circuit reiterated in *Newsom v. Albermarle Cnty. Sch. Bd.*, "the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression." 354 F.3d 249, 261 (4th Cir. 2003) (quoting *Homanes v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001)). After weighing all of the requisite factors, this Court believes that Lux is entitled to the permanent injunctive relief he seeks. Next, the Court must determine the specific form of that relief under the particular facts presented.

The Supreme Court has consistently counseled restraint in the revision of statutory provisions found to be unconstitutional. Judicial expurgation of legislation should be surgical and narrowly focused on the offending language. As the Court cautioned in *Ayotte v. Planned Parenthood of N. New England*, "[g]enerally speaking, when confronting a constitutional flaw in the statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact." 546 U.S. 320, 328–29, 126 S. Ct. 961, 967–98 (2006) (citing *United States v. Booker*, 543 U.S. 220, 227–29, 125 S. Ct. 738, 746–47 (2005)) (internal citations omitted).

The Court in *Ayotte* further elaborated on the rationale for restraint.

> We try not to nullify more of a legislature's work than is necessary, for we know that "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." . . . Accordingly, the "normal rule" is that "partial rather than facial invalidation is the required course." Such that a "statute may . . . be declared invalid to the extent it reaches too far, but otherwise left intact."

16

*Id.* (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504, 105 S. Ct. 2794, 2802 (1985)) (internal citations omitted). In short, the judicial branch should exercise circumspection in invading the legislative domain and exercising its remedial powers to circumvent the intent of the legislature. *See Califano v. Westcott*, 443 U.S. 76, 94, 99 S. Ct. 2655, 2666 (1979) (Powell, J., concurring in part and dissenting in part).

The specific restriction at issue in this case—the so-called district residency requirement—is a derivative of several sections of the Virginia Code. The operative provision of Section 24.2-506 requires "[e]ach signature on the petition [to] have been witnessed by a person who is himself a qualified voter, or qualified to register to vote, for the office for which he is circulating the petition and whose affidavit to that effect appears on each page of the petition." Va. Code Ann. 24.2-506. As explained previously, Section 24.2-101 defines a qualified voter, in pertinent part, as a resident of the Commonwealth of Virginia and of the precinct in which he offers to vote, who is registered to vote. To avoid unnecessary trespass on legislative prerogative, this Court will not attempt specific reformation of the statutory language under review. The term "district residency requirement," as employed by this Court and the Fourth Circuit, and its statutory origin are well understood by both parties in this case. The statutory revision required for rectification is best left to the Virginia General Assembly. For the foregoing reasons, however, this Court will permanently enjoin the Virginia State Board of Elections and its successors from enforcing the district residency requirement with respect to the circulation of petitions for independent candidates for the U.S. House of Representatives.

17

An appropriate Order will accompany this Memorandum Opinion.

                                   /s/

                                Henry E. Hudson
                                United States District Judge

Dated: Feb. 8, 2012
Richmond, Virginia