## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| HERB LUX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10CV482—HEH |
| | ) | |
| CHARLES E. JUDD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
### (Plaintiff's Motion for Attorneys' Fees)

On February 8, 2012, this Court deemed unconstitutional, and permanently enjoined the Virginia State Board of Elections from enforcing, that portion of Virginia Code § 24.2-506 which imposed a district residency requirement for persons circulating petitions on behalf of independent candidates for the U.S. House of Representatives. On March 7, 2012—exactly four weeks after the Court's entry of summary judgment in Plaintiff's favor—the Virginia General Assembly amended § 24.2-506 to repeal the statute's infirm provision. The case now comes before the Court on Plaintiff's Motion for Attorneys' Fees. Having secured declaratory and injunctive relief in the underlying litigation, Plaintiff seeks reimbursement as a "prevailing party" under 42 U.S.C. § 1988 for the fees and costs he incurred in this matter.

The central question presented is whether the voluntary action of the Virginia legislature, which effectively made enforcement of this Court's judgment unnecessary, negates Plaintiff's "prevailing party" status or otherwise diminishes the extent of his

success in this litigation. In addition, the parties dispute the effect of Plaintiff's failure to

obtain *preliminary* injunctive relief on his entitlement to recover the entirety of his legal

expenses. The Court will dispense with oral argument because the facts and legal

contentions are adequately presented in the materials submitted by both parties, and oral

argument would not aid in the decisional process. For the reasons set forth herein,

Plaintiff's Motion will be granted in part.

## I. BACKGROUND

The facts of this matter are thoroughly laid out in this Court's prior Opinions.[1]

Section 24.2-506 of the Code of Virginia provides that any candidate for public office,

other than a party nominee, must submit to the Virginia State Board of Elections ("the

Board" or, together with its current members,[2] "Defendants") a petition signed by a

designated number of qualified voters in order to have their name printed on the official

ballot. As it existed prior to and during the pendency of this action, the statute further

mandated that "[e]ach signature on the petition ... have been witnessed by a person who

is himself a qualified voter, or qualified to register to vote, for the office for which he is

circulating the petition and whose affidavit to that effect appears on each page of the

petition." Va. Code Ann. § 24.2-506 (2010). This latter provision was the subject of

Plaintiff's underlying constitutional challenge.

---

[1] *See* ECF Nos. 29 (denying Plaintiffs' Motion for Preliminary Injunction and granting Defendants' Motion to Dismiss) & 74 (granting Plaintiff's Motion for Summary Judgment).

[2] The original lawsuit filed in this Court was styled *Herb Lux, et al. v. Nancy Rodrigues, et al.* On January 28, 2011, Charles Judd, Kimberly Bowers, and Donald Palmer became members of the Virginia State Board of Elections and were substituted as named Defendants by operation of law under Federal Rule of Civil Procedure 25(d). The Fourth Circuit affirmed this Court's dismissal of Herb Lux's original co-plaintiffs.

2

Plaintiff Herb Lux ("Lux" or "Plaintiff") was an announced candidate for the U.S. House of Representatives in Virginia's Seventh Congressional District in 2010.  At that time, however, Lux resided in the First, rather than the Seventh, District.  In pursuing his independent candidacy, Lux timely filed a statement of qualification, a declaration of candidacy, and seventy-eight candidate petitions purportedly containing approximately 1220 signatures, as required by §§ 24.2-501, 505, and 506 of the Virginia Code, respectively.  Sixty-three of these candidate petitions, bearing approximately 1063 signatures, were circulated and witnessed personally by Lux, who was neither "a qualified voter," nor "qualified to register to vote" in the Seventh Congressional District. Lux otherwise met all of the statutory and constitutional qualifications to run for office in the Seventh District.

On June 21, 2010, thirteen days after filing his petition and accompanying forms, Lux was advised that all petitions bearing his name and signature as witness would be excluded from the Board's verification process.  In rejecting his petitions, the Board specifically cited § 24.2-506 and concluded that because Lux was not a resident of the Seventh Congressional District, he was not eligible by statute to witness petition signatures—even for his own candidacy.  The Board did, however, accept the signatures on petitions circulated by other residents.  But after excluding the more than 1063 signatures witnessed by Lux, the Board determined that he had failed to collect the requisite 1000 signatures, and consequently, did not qualify to have his name included on the November 2, 2010 ballot.

Lux filed suit in this Court on July 13, 2010, asserting that the so-called district

residency requirement, both facially and as applied to his candidacy for the U.S. House of

Representatives, violated his freedom of political speech and association under the First

and Fourteenth Amendments to the United States Constitution. In addition to seeking a

declaratory judgment as to the provision's unconstitutionality, Plaintiff urged this Court

to award him injunctive relief permanently "enjoining [the Board] . . . from enforcing the

district-residency requirement." (Pl.'s Compl. 10.) Lastly, Plaintiff sought a permanent

injunction "compelling [the Board] to verify and count all signatures contained on [his]

candidate petitions regardless of whether the petition circulator satisfies the district-

residency requirement." (*Id.*)

On the same date, Lux also filed a motion to preliminarily enjoin the Board from

applying the district residency requirement pending the resolution of this litigation.

Relying upon *Libertarian Party of Virginia v. Davis*, 766 F.2d 865 (4th Cir. 1985), this

Court initially denied Plaintiff's request. In *Davis*, the Fourth Circuit had specifically

rejected a challenge to a residency requirement similar to the one here at issue. On

appeal, however, the Fourth Circuit counseled this Court that the teachings of *Davis* may

have been undermined by subsequent Supreme Court decisions. *Lux v. Judd*, 651 F.3d

396, 401-04 (4th Cir. 2011). The Fourth Circuit thus reversed and remanded, instructing

this Court to "conduct an independent analysis of the state interest served by the district

residency requirement and, after determining the appropriate standard of review,

conclude whether that portion of section 24.2-506 unduly restricts Lux's constitutional

rights." *Id*. at 404.

Heeding the Fourth Circuit's directive on remand, this Court evaluated the district

4

residency requirement under the rubric of "strict or exacting scrutiny." *Lux v. Judd*, No. 3:10CV482—HEH, 2012 WL 400656, at *5 (E.D. Va. Feb. 8, 2012). "Given the availability of other equally effective and decidedly less burdensome statutory tools to safeguard the Commonwealth's interest in protecting the integrity of the electoral process," this Court held that the challenged provision "pose[d] an undue restriction on Lux's First Amendment rights" to circulate his own petitions and to utilize non-resident supporters to disseminate his political message. *Id.* at *7. The Court therefore declared the district residency requirement to be unconstitutional, and permanently enjoined its enforcement "with respect to the circulation of petitions for independent candidates for the U.S. House of Representatives." *Id.* at *7-9.

Shortly after the entry of this Court's judgment on February 8, 2012, the Virginia General Assembly repealed that portion of Virginia Code § 24.2-506 deemed constitutionally offensive. Although the Virginia Senate introduced legislation aimed at amending the district residency requirement on January 19, 2012, the enactment did not go into effect until March 7, 2012—precisely one month after this Court granted Lux's request for declaratory and injunctive relief. Specifically, the Virginia House of Delegates and Senate passed on February 24, 2012, and the Governor signed into law on March 7, 2012, Senate Bill 613, which provided the following change:

> Each signature on the petition shall have been witnessed by a person who is himself a ~~qualified voter, or qualified to register to vote, for the office for which he is circulating the petition~~ *legal resident of the Commonwealth and who is not a minor or a felon whose voting rights have not been restored* and whose affidavit to that effect appears on each page of the petition.

S.B. 613, 2012 Sess., 2012 Va. Acts Ch. 166. Because it contained an emergency clause,

the amended statute became effective on the day it was signed into law.

In the instant Motion for Attorneys' Fees, Lux now seeks to recoup $256,452.11 in legal expenses, including $227,967.50 in fees for lead counsel, $8,520 in fees for local counsel, and $19,964.61 in costs.[3] In opposition to Plaintiff's request, Defendants argue that the recent actions of the General Assembly rendered Plaintiff's victory in this case only "technical" or "*de minimis*," and thus "insufficient to merit an award of attorneys' fees." (Defs.' Mem. Opp'n 1-2, 5-6.) Alternatively, Defendants contend that Plaintiff's fee award "should be substantially reduced to reflect his limited success." (*Id.* at 2.) In addition to the impact of the legislative repeal of the district residency requirement, Defendants point out that counsel for Lux expended a considerable amount of time litigating the claims of Lux's co-plaintiffs, who were ultimately dismissed from the case, and attempting—without avail—to secure preliminary injunctive relief. Plaintiff should not recover, Defendants assert, fees incurred in pursuing these "unsuccessful claims." (*Id.* at 9.) Plaintiff has replied, and the matter is now ripe for decision.

## II. STANDARD OF REVIEW

Title 42 U.S.C. § 1988 authorizes district courts, in their discretion, to award reasonable attorneys' fees to prevailing parties in cases brought under § 1983 of the same title. *See* 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of section[] ... 1983, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."). As an initial matter, therefore, a party

---

[3] This amount encompasses the proceedings in this Court, the Fourth Circuit, and Supreme Court, as well as time spent litigating the instant request for fees.

may recover his attorneys' fees only if he qualifies as a "prevailing party." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam) ("Congress intended to permit the ... award of counsel fees only when a party has prevailed on the merits."); *see also Hewitt v. Helms*, 482 U.S. 755, 759 (1987) ("In order to be eligible for attorney's fees under § 1988, a litigant must be a 'prevailing party.'").

Under the Supreme Court's "generous formulation" of the term, a plaintiff constitutes a "prevailing party" for attorneys' fees purposes if he "succeed[s] on any significant issue in litigation which achieves some of the benefit ... [he] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). More precisely, "to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). Thus, "there must be a 'material alteration of the legal relationship of the parties,' and there must be 'judicial *imprimatur* on the change.'" *Grissom v. Mills Corp.*, 549 F.3d 313, 318 (4th Cir. 2008) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604-05 (2001)).

Significantly, qualification as a prevailing party "brings the plaintiff only across the statutory threshold." *Hensley*, 461 U.S. at 433; *see also Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005) (clarifying that prevailing-party status "means only that [the plaintiff] is eligible for, rather than entitled to, an award of attorney's fees"). Ordinarily, a prevailing plaintiff in a § 1983 action "should ... recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at

7

429; *see also Fox v. Vice*, 131 S. Ct. 2205, 2213-14 (2011) (explaining that a plaintiff

who "obtains meaningful relief" in a civil rights action has "vindicated Congress's

statutory purposes" and therefore "'should ordinarily recover an attorney's fee'")

(quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978)). And as the

Supreme Court recently reiterated, "plaintiffs may receive fees under § 1988 even if they

are not victorious on every claim." *Fox*, 131 S. Ct. at 2213. But "[i]t remains for the

district court to determine what fee is 'reasonable,'" and "[t]he *amount* of the fee ... must

be determined on the facts of each case." *Hensley*, 461 U.S. at 433 (emphasis added).

"The most useful starting point for determining the amount of a reasonable fee is

the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate." *Id.*; *see also Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th

Cir. 2009). Because it "provides an objective basis on which to make an initial estimate

of the value of a lawyer's services," this so-called "lodestar method" generates a

presumptively reasonable fee. *Hensley*, 461 U.S. at 433; *see also Perdue v. Kenny A.*,

130 S. Ct. 1662, 1674 (2010) ("[T]here is a 'strong presumption' that the lodestar figure

is reasonable."). "[C]alculation of the lodestar 'does not end the inquiry,'" however.

*Lyle v. Food Lion*, 954 F.2d 984, 989 (4th Cir. 1992) (quoting *Pennsylvania v. Del.*

*Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The court may

"adjust the lodestar upward or downward as it deems appropriate," so long as it does so

"on a principled basis, clearly explained by the court." *Id.* (citing *Blum v. Stenson*, 465

U.S. 886, 888 (1984), and *Hensley*, 461 U.S. at 437-40).

In assessing the overall reasonableness of a fee request, a district court's discretion

should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.[4]

*Robinson*, 560 F.3d at 243-44. Chief among these considerations is "the degree of the plaintiff's overall success." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation omitted). To that end, the district court should weigh "the amount of damages awarded as compared to the amount sought," *id.* at 114-15, or, in an action for injunctive relief, "the scope of the injunctive relief sought [as compared] to the relief actually granted." *Mercer*, 401 F.3d at 205. Where "a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim ..., the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115. Contrariwise, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. In short, the "result is what matters." *Id.*

### III. ANALYSIS

It is undisputed in this case that Lux is a prevailing party under § 1988. Admittedly, a "judicial pronouncement that the defendant has violated the Constitution,"

---

[4] Although "these factors must be considered ... in arriving at a determination of reasonable attorneys' fees," the court need not address each one in extensive detail. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

standing alone, "does not render the plaintiff a prevailing party." *Farrar*, 506 U.S. at 112; *see also Rhodes v. Stewart*, 488 U.S. 1, 3 (1988) (per curiam) (stating that entry of a declaratory judgment in a plaintiff's favor does not "automatically render[] that party prevailing under § 1988"). The finding of unconstitutionality in this case, however, was "accompanied by an enforceable judgment on the merits," *Farrar*, 506 U.S. at 112—a permanent injunction barring Defendants from enforcing the district residency requirement. This Court's judgment therefore materially altered the legal relationship between the parties and directly "affect[ed] [Defendants'] behavior." *Rhodes*, 488 U.S. at 4. Correspondingly, Lux became free, as of the entry of judgment, to meaningfully circulate his own petitions and to utilize non-district residents to do the same.[5] Because Plaintiff secured relief that "directly benefit[ed] him at the time of the judgment," *Farrar*, 506 U.S. at 111, he is eligible for an award of attorneys' fees pursuant to § 1988.

---

[5] Although Defendants contend that the Virginia General Assembly's post-judgment repeal of the district residency requirement *minimizes* the import of Plaintiff's success, this plainly is *not* a case in which the plaintiff "failed to secure a judgment on the merits or a court-ordered consent decree, but … nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 605. In *Buckhannon*, the West Virginia state legislature eliminated—prior to the entry of any judgment—the statutory provision challenged by the plaintiff, and the district court dismissed the case as moot. In affirming the denial of attorneys' fees, the Supreme Court concluded that although the plaintiff had obtained a favorable outcome, the changed relationship between the parties "lacke[ed] the necessary judicial *imprimatur.*" *Id.*

Here, by contrast, Defendants were compelled by judicial decree—*before* the challenged provision was amended or repealed"—to modify their behavior in a manner favorable to Lux. *Zesser v. Keith*, 536 F.3d 788, 796 (7th Cir. 2008) (emphasis added). Since extrinsic events did not render this case "moot before judgment issued," *Rhodes*, 488 U.S. at 2, the "catalyst theory" rejected by the Supreme Court in *Buckhannon* is inapposite. *Cf. Project Vote/Voting for Am., Inc. v. Dickerson*, 444 Fed. App'x. 660, 663 (4th Cir. 2011) (unpublished) ("*Buckhannon* resolved only the issue of whether the catalyst theory was an appropriate means of determining if the plaintiff was a prevailing party, … [not] 'the issue of the factors to be applied in determining the reasonableness of an attorney's fee award to a prevailing party.'") (quoting *Benton v. Oregon Student Assistance Comm'n*, 421 F.3d 901, 907 (9th Cir. 2005)).

## A.  Lux Achieved More than a "Purely Technical" or *De Minimis* Victory

As a prevailing party, Lux is entitled to recover a "reasonable" fee, so long as he obtained at least some modicum of "meaningful" relief. *Fox*, 131 S. Ct. at 2214. The immediate task, therefore, is to determine what constitutes a reasonable award under the present facts. As a threshold issue, Defendants argue that the "success [Lux] achieved is merely technical and is of no practical value to the controversy that gave rise to the lawsuit." (Defs.' Mem. Opp'n 5.) Moreover, they contend that Lux "failed to achieve the primary objective of this action: a preliminary injunction which would allow him to qualify as a congressional candidate on the ballot in the 2010 election." (*Id.* at 5-6.) For both of these reasons, Defendants assert that Lux "should receive no attorney's fees at all." *Farrar*, 506 U.S. at 115. Both of their arguments miss the mark.

In the first instance, Defendants' emphasis on Lux's failure to achieve his "primary" objective—according to Defendants, placement on the 2010 ballot—is misplaced. Indeed, the Supreme Court in *Garland* expressly "rejected the use of a ... subjective approach," including a "'central issue' test," when determining an appropriate fee award. *Mercer*, 401 F.3d at 205 (citing *Garland*, 489 U.S. at 787-91). Consistent with that precedent, the Fourth Circuit has explained that "consideration of the plaintiff's motives" is unnecessary "to determine the extent of the relief obtained by the plaintiff." *Id.* Thus, rather than focus on "the relief that was *most important* to the plaintiff," district courts must evaluate the degree to which the plaintiff secured "the relief that was *sought.*" *Id.* (citing *Farrar*, 506 U.S. at 114-15). This inquiry is an objective one. Here, even if Lux's lawsuit was motivated principally by his desire to secure a spot in the 2010

congressional election, his Complaint *asked for*—and Lux achieved—considerably more.

Viewed from that vantage point, this action clearly did not culminate in a mere nominal or *de minimis* victory. Under the Supreme Court's definition, a "purely technical" prevailing party is one who "recovers only nominal damages because of his failure to prove an essential element of his claim." *Farrar*, 506 U.S. at 115; *see, e.g., id.* at 116 (denying fee award under § 1988 to civil rights plaintiffs who recovered only one dollar on claim for 17 million dollars in damages); *People Helpers Found., Inc. v. City of Richmond*, 12 F.3d 1321, 1328 (4th Cir. 1993) (denying attorneys' fees where plaintiff "failed to collect one dollar" of the several million dollars it sought in compensatory and punitive damages); *Miller v. Cunningham*, 564 F. Supp. 2d 555, 558 (E.D. Va. 2008) (finding no fee award warranted where the plaintiffs prevailed on only "a narrow strand of their constitutional challenge"). Such parties "either ha[ve] failed to achieve victory at all, or ha[ve] obtained only a Pyrrhic victory for which the reasonable fee is zero." *Farrar*, 506 U.S. at 117 (O'Connor, J., concurring). In this case, Lux obtained meaningful relief from the burden previously imposed upon his political speech.

This Court's decision in *Miller v. Cunningham* does not compel a different result. *Miller* involved a First Amendment challenge to the "open primary" electoral process established by § 24.2-530 of the Virginia Code. 564 F. Supp. 2d at 556. After extensive briefing and oral argument, this Court concluded that, "with one limited exception," the contested provision did not impermissibly burden the rights of Virginia political parties. *Id.* Specifically, the Court held only one "narrow and perhaps infrequent application" of the statute to be "unconstitutional as applied to the specific facts of [that] case," and

enjoined the enforcement of the "questionable application" in the upcoming senatorial election. *Id.* at 556-59. Although "minimal," this Court found "[t]he benefits received by the plaintiffs as a result of this Court's judgment ... technically sufficient to support prevailing party status." *Id.* at 558. But because plaintiffs had "achieved only a fraction of the relief they sought," and since "[t]he legal relationship between the parties essentially remain[ed] the same," this Court determined that the plaintiffs' success was not "sufficient in degree" to warrant an award of attorneys' fees. *Id.* at 558-59.

Unlike the plaintiffs in *Miller*, Lux did not win on only "a narrow strand of [his] constitutional challenge." *Id.* at 557. Finding the district residency requirement unconstitutional on its face and as applied, this Court permanently enjoined the application of that component of § 24.2-506 to *all* candidates in *all* future congressional elections in Virginia. And although he did not obtain immediate relief—that is, a preliminary injunction "compelling Defendants to verify and count all signatures contained on [his] candidate petitions" (Pl.'s Compl. at 10)—Lux's failure in this regard can hardly overshadow, much less nullify, the import of the permanent relief he received. As the Supreme Court has made clear, "the presence of ... unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights." *Fox*, 131 S. Ct. at 2214.

Nor do the extrinsic actions of the Virginia legislature remove this case from the prevailing party heartland. On that issue, the D.C. Circuit's decision in *Nat'l Black Police Ass'n v. D.C. Bd. of Elections*, 168 F.3d 525 (D.C. Cir. 1999), is instructive. Similar to Lux, the plaintiffs in *NBPA* claimed that a District of Columbia voter initiative

13

capping campaign contributions for local candidates improperly infringed on their First Amendment speech and association rights. The district court denied preliminary injunctive relief, but after adjudication on the merits declared the initiative to be unconstitutional. Prior to trial, however, the D.C. City Council introduced a bill designed to raise the existing contribution limits, and thereby cure any constitutional deficiency. Fifty-two days after the district court permanently enjoined enforcement of the citizen initiative, the City Council's repealing legislation became effective.

As in the immediate case, the defendants in *NBPA* argued that the plaintiffs were not entitled to attorneys' fees "because their victories [were] 'purely symbolic,' technical and *de minimis*." *Id.* at 528. The Court of Appeals disagreed, finding that the plaintiffs had "secured a real-world vindication of their First Amendment rights, even if, as it proved, extraneous events would have given them the substantial equivalent 52 days later." *Id.* (noting that "the subsequent mootness of a case does not necessarily alter the plaintiffs' status as prevailing parties"). Because "[t]he relief [the plaintiffs] ultimately won was specifically the relief they requested," and in view of the "intrinsic[] valu[e]" in protecting First Amendment freedoms, the D.C. Circuit concluded that the plaintiffs had obtained more than a *de minimis* victory, and affirmed as reasonable an award of $619,831.87 in fees. *Id.* at 529-31.

The Seventh Circuit reached a similar conclusion in *NRA v. City of Chicago*, 646 F.3d 992 (7th Cir. 2011). In that case, the U.S. Supreme Court held several contested city firearm ordinances to be unconstitutional, reversing the decisions of the courts below. "[B]ut before the district court could enter a final judgment," the defendant municipalities

14

repealed the ordinances at issue. *Id.* at 993.  Nonetheless, in considering the NRA's request for attorneys' fees, the Seventh Circuit applied the settled rule that "[a] litigant that surrenders or settles *after* a judgment ... does not deprive the victor of prevailing-party status." *Id.* at 994.  As the "judgment of the Supreme Court" had "alter[ed] the legal relationship of the parties" and given the plaintiffs "everything they needed," the plaintiffs qualified as "prevailing parties," and were therefore entitled to "reasonable attorneys' fees under § 1988." *Id.*  The same principles are applicable here.

"By the time Defendants bowed to the inevitable" in this case, Lux "had in hand a judgment" from this Court "that gave [him] everything [he] needed." *Id.*  Indeed, save for this Court's denial of an interlocutory injunction, Lux "received exactly the relief [he] sought." *Nat'l Black Police Ass'n*, 168 F.3d at 529.  Lux thus achieved "a real-world vindication of [his] First Amendment rights, even if, as it proved, extraneous events would have given [him] the substantial equivalent [twenty-eight] days later." *Id.* at 528.  Such success simply cannot "be characterized as 'purely technical or *de minimis*,'" *id.* at 529 (quoting *Garland*, 489 U.S. at 792), nor as merely "forma[l]." *Farrar*, 506 U.S. at 115.  Having established the nontriviality of Lux's success at the time of judgment,[6] this Court must now decide what fee would be reasonable under the facts of this case.

## B.     Calculation of the Lodestar Figure

The lodestar analysis requires this Court to calculate "the number of hours

---

[6] Under Defendants' line of reasoning, Lux would have been entitled to a fully compensatory fee had he only filed his request *before* the General Assembly's amending legislation took effect.  But Congress cannot have intended for the prevailing-party analysis "to depend entirely on the timing of a request for fees." *Garland*, 489 U.S. at 791.  Rather, the inquiry must turn on the extent of the plaintiff's success "at the conclusion of the litigation." *Id.*

reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. In the instant motion, Lux seeks reimbursement for 34.6 hours billed by lead counsel James Bopp Jr. at an hourly rate of $575; as well as the following expenditures by associate counsel: 7.8 hours billed by Richard Coleson at a rate of $450 per hour; 32.8 hours billed by Jeffrey P. Gallant at a rate of $400; 131 hours billed collectively by Josiah Neeley and Anita Woudenberg at a rate of $360; 198.9 total hours billed by Kaylan Phillips and Scott Bienek at a rate of $325; 255 hours billed by Jared M. Haynie at a rate of $300; 20.1 hours billed by Austin Hepworth at an average rate of $156.22;[7] and 21.3 hours billed by local counsel Mark R. Matney at a rate of $400. (ECF Nos. 82-3, 84-2; & 86-2.) In support of his request, Plaintiff has provided several billing statements containing time entries detailing counsel's work.

## 1. *Determination of a Reasonable Hourly Rate*

This Court must first determine whether Plaintiff's fee request incorporates hourly rates that are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. Applicants bear the burden of proving that their asserted hourly rates are reasonable, and as noted by the Fourth Circuit, "determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). To meet their burden, movants "must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of

---

[7] According to Plaintiff, Mr. Hepworth "began work on the case as a clerk, ... and then participated as an attorney." (Pl.'s Mem. Supp. 5.) Lux proposes an hourly rate of $150 for Mr. Hepworth's work on this matter as a clerk, and a rate of $275 for his work as an attorney.

16

work for which [they] seek[] an award." *Grissom*, 549 F.3d at 321. The fee applicants

may draw from "a range of sources," including "evidence of the fees [counsel] ha[ve]

received in the past," *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 290 (4th Cir. 2010),

or "affidavits of other local lawyers who are familiar both with the skills of the fee

applicants and more generally with the type of work in the relevant community." *Plyler*,

902 F.2d at 278; *see also Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986) (considering

"affidavits from other area attorneys").

   In this case, Lux's lead attorney, Mr. Bopp, has submitted a sworn affidavit setting

forth in detail his credentials and experience, as well as the qualifications of associate

counsel. Having litigated approximately 100 constitutional and civil rights cases in

nearly 40 years of practice, Mr. Bopp owns and chairs The Bopp Law Firm, which he

describes as "one of the nation's leading firms in the field of First Amendment and

election law litigation." (Bopp Aff. ¶¶ 1-3.) And although their years of practice vary

widely, Lux's other attorneys similarly "specialize[] in constitutional litigation and

dedicate[] most or all of their practice to that field." (*Id.* at ¶ 4.) Mr. Bopp avers that the

requested rates "are comparable, if not lower than, rates [his firm has] charged clients for

similar work." (*Id.* at ¶ 12.)

   Plaintiff has also attached to his petition the declaration of Anthony F. Troy,

senior counsel in the Richmond, Virginia office of Troutman Sanders LLP. As a former

Attorney General of the Commonwealth of Virginia and a longstanding practitioner in

this and other Virginia courts, Mr. Troy is "familiar with the hourly rates generally

charged by attorneys in the Eastern District of Virginia for comparable services as

provided by Plaintiff's counsel here." (Troy Decl. ¶ 9.) Well versed in election-law

matters, Mr. Troy indicates that "Mr. Bopp and his Firm have a national reputation based

on extensive experience in Constitutional Law, Election Law, and Appellate Practice."

(*Id.* at ¶ 7.) Further, based on his "involv[ement] with and know[ledge] [of] the[] issues"

presented in this case, Mr. Troy opines that "the rates charged by Plaintiff's counsel,

based on years of practice and experience, are within the range of market rates for

lawyers of comparable skill and experience for litigation of similar complexity in the

Eastern District of Virginia legal community." (*Id.* at ¶ 10.)

Finally, Lux offers the declaration of Mark R. Matney, his local counsel in this

matter. A Virginia attorney since 1993, Mr. Matney is presently an associate with the

law firm of Michael C. Tillotson, LLC. Having assisted Lux's out-of-state counsel in the

navigation of this Court's procedures and practices, Mr. Matney asserts that his requested

hourly rate of $400 "is reasonable and within the prevailing market rates for comparable

cases in Virginia for attorneys with comparable skill, expertise, and reputation." (Matney

Decl. ¶ 4.) This Court agrees.

By producing counsel's "own affidavit[]," as well as the declaration of Mr. Troy, a

local lawyer familiar with the fees ordinarily charged in similar federal election-law

matters, Plaintiff has met his burden to produce "satisfactory specific evidence" of

relevant market rates in the Eastern District of Virginia. *Plyler*, 902 F.2d at 277-78.

Based upon the evidence presented, this Court is satisfied that the hourly rates charged by

counsel in this case appropriately reflect each attorney's relative seniority and expertise.

The Court therefore finds the requested rates to be reasonable.

## 2. Determination of a Reasonable Expenditure of Time

Next, the Court must assess whether Defendant's fee demand represents a reasonable expenditure of time. This second stage of the lodestar analysis requires the Court to "exclude from [its] initial fee calculation" any excessive, redundant, or otherwise "not 'reasonably expended'" hours. *Hensley*, 461 U.S at 434. Based on this Court's review of Plaintiff's motion and billing invoices, Plaintiff appears to request reimbursement for 701.5 hours of counsel's time.[8]

Upon close inspection, this Court finds that the number of hours claimed by Lux is slightly excessive. Despite the important constitutional questions involved, this litigation did not present the sort of technical, evidentiary, or procedural complexities that might justify the expenditure of more than 700 hours by a team of ten attorneys. To be sure, this case climbed to the Supreme Court and back before it was finally resolved. Yet the briefing and argument in this matter was cabined to a singular issue: whether Lux's First Amendment rights were unduly burdened by Virginia's district residency restriction. *Lux*, 651 F.3d at 398. For that reason, the proceedings in this Court and others were short in duration, and entailed little or no evidentiary discovery.

In view of the limited scope of this lawsuit, the Court finds that a ten percent reduction in the hours claimed by Lux would yield a reasonable total expenditure of time.

---

[8] In order to fulfill his obligation to "submit evidence supporting the hours worked," *Hensley*, 461 U.S. at 433, Plaintiff has filed billing invoices with time entries for all of the tasks underlying his request. In addition, counsel for Lux represents that they have "decided to strike as 'no charge' 130.9 hours of time spent ... working on the case." (Pl.'s Mem. Supp. 4.)

This alteration yields a lodestar amount of $212,838.75.[9]

## C.    Adjustment of the Lodestar Amount

Where a prevailing plaintiff "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436.  This may be true "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.*  Thus, "after calculating the lodestar figure, the 'court should then subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Grissom*, 549 F.3d at 313 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)); *see also Fox*, 131 S. Ct. at 2214 ("The fee award ... should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief.").  In the same vein, courts have broad discretion to modify the lodestar to more accurately reflect the extent of a litigant's success.  *See Johnson*, 278 F.3d at 337 ("Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.").  A modest downward adjustment of Lux's fee request is appropriate here.

Of course, parsing time expenditures on interrelated claims can be a tortuous task.  Given the "messy" reality of modern litigation, *id.*, the Supreme Court has recognized two general categories of multiple-issue cases.  On the one hand:

> [A] plaintiff may present in one lawsuit distinctly different claims for relief
> that are based on different facts and legal theories.  In such a suit, even

---

[9] This lodestar amount includes, and reduces proportionately, the attorneys' fees requested by both lead and local counsel.

> where the claims are brought against the same defendants[,] ... counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

On the other hand:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S at 434-35. Defendants contend that this case falls within the former category, and that Lux's fee award should be adjusted to exclude time specifically expended on behalf of his dismissed co-plaintiffs or attempting to secure preliminary relief. In response, Lux asserts that even if he failed to attain all of the relief he sought, his lawyers spent a reasonable amount of time litigating the core constitutional claim on which he ultimately prevailed. Thus, he argues that the unsuccessful ingredients of his lawsuit should not be "excised" for purposes of attorneys' fees. (Pl.'s Mem. Reply 6-7.)

The determination of an appropriate lodestar discount is not governed by a "precise rule or formula." *Id.* at 436; *see also id.* at 435 n.11 (rejecting a "mathematical" approach"). Rather, district courts "necessarily ha[ve] discretion" in deciding whether "to attempt to identify specific hours that should be eliminated" or simply to "reduce the award to account for the limited success." *Id.* at 436. Finding Lux's winning and failed

21

"claims" to be separate strands of a single tapestry, this Court will focus its analysis "on the significance of the *overall* relief obtained" by Lux in relation to the hours reasonably devoted to this case. *Id.* at 435 (emphasis added).

Most notably, while Lux ultimately prevailed on his constitutional challenge to Virginia's district residency requirement, he was unsuccessful in his effort to compel the Board to count signatures on those petitions witnessed by Lux himself. In light of the proximity of this lawsuit to the 2010 congressional election, Lux's failure to obtain an emergency injunction can hardly be considered a marginal shortcoming. And though this Court's denial of interlocutory relief was later reversed on the basis of modified circuit precedent, the holding of the Fourth Circuit does not undermine this Court's conclusion that Lux had failed at the time of his request to clearly demonstrate a likelihood of success on the merits. Thus, hindsight notwithstanding, the significant efforts of Lux's counsel in pursuing *preliminary* injunctive relief in this Court and others were not wholly reasonable.

In addition, Defendants aptly point out that counsel for Lux "indisputably performed work to demonstrate that his co-plaintiffs had standing." (Def.'s Mem. Opp'n 12.) Time expended on behalf of Lux's co-plaintiffs—Stephen Cruse, Andrew Mikel, and Eugene Foret—whom this Court held to lack standing, is not properly compensable under § 1988. *See Shaw v. Hunt*, 154 F.3d 161, 166 (4th Cir. 1998) ("[A] plaintiff without standing will not be able to recover fees ... because the possession of Article III standing is interwoven into the very concept of plaintiff status."). Because these co-plaintiffs were not proper parties to this action, Lux should not recoup the fees paid for

22

Case 3:10-cv-00482-HEH   Document 87   Filed 06/14/12   Page 23 of 24 PageID# 860

counsel's work in furtherance of their claims.

Even if ancillary to the claim on which Lux eventually prevailed, these aspects of Lux's lawsuit—viewed "in comparison to the scope of the litigation as a whole"—reveal that his victory was not unlimited. *Hensley*, 461 U.S. at 440. Indeed, Lux recognizes as much. (*See* Pl.'s Mem. Supp. at 9 ("While Mr. Lux may not have succeeded in 'every contention raised in the law suit,' i.e.[,] every argument or legal theory, he did prevail on his sole claim, i.e., that Virginia's district residency requirement, now permanently enjoined, inhibited his speech and associational rights.").) The fee award in this case must be adjusted accordingly.

Having reviewed the extensive billing statements of Plaintiff's counsel, this Court finds that a claim-by-claim or issue-by-issue modification of the lodestar would be impracticable. Instead, a moderate percentage reduction in the lodestar amount would adequately reflect Plaintiff's meaningful, yet partial, success in this litigation. A fifteen-percent discount yields an award of $180,912.94 in attorneys' fees, a sum that this Court deems commensurate with the degree of Lux's success under § 1988.

**D.     Calculation of Necessary Costs**

A prevailing plaintiff in a § 1983 action is also entitled to recover the costs reasonably incurred in litigating his claims. *See Trimper v. City of Norfolk*, 58 F.3d 68, 75 (4th Cir. 1995) ("[Section] 1988 contemplates reimbursement not only for attorney's fees but also litigation expenses such as secretarial costs, copying, telephone costs and necessary travel."); *Daly*, 790 F.2d at 1084 ("[Section] 1988 is intended to encourage [civil rights plaintiffs] to bring suit by shifting the costs of litigation to defendants who

have been found to be wrongdoers."). In this case, Lux seeks reimbursement for $19,964.61 in costs. The Court has carefully reviewed Plaintiff's itemized expenses and finds that the requested costs are appropriate under § 1988. Defendants will therefore be required to pay Lux's litigation costs in the amount of $19,964.61.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's request for attorneys' fees and costs. Finding the initial lodestar calculation to yield an unreasonably high figure, however, the Court will impose a modest discount and require Defendants to pay Lux's legal fees in the amount of $180,912.94. Plaintiff's request for $19,964.61 in costs will be granted, and Defendants will therefore be required to reimburse Plaintiff's total litigation expenses, including attorneys' fees, in the amount of $200,877.55.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Dated: June 14, 2012
Richmond, Virginia

24